UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:21-CV-00354-GNS

NU-X VENTURES                                                                PLAINTIFF

v.

SBL, LLC d/b/a GLOBAL CANNABINOIDS                                           DEFENDANT

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendant's Motion to Compel Arbitration (DN 18). The motion is ripe for adjudication. For the reasons outlined below, the motion is **GRANTED**.

## I.   BACKGROUND

In 2019, Plaintiff Nu-X Ventures ("Nu-X") and Defendant Global Cannabinoids ("Global") entered into an agreement for Global to sell CBD products to Nu-X. (Compl. ¶ 16, DN 1). The agreement was negotiated by John Merritt, Global's Vice President of Sales and Business Development, and Nu-X's agent, Michael Hernandez. (Compl. 6). The transactions were initiated by purchase orders ("Purchase Orders") from Nu-X to Global dated October 16, 2019, and November 26, 2019. (Compl. ¶ 17).

On October 16, 2019, Nu-X ordered 1,000 cases of CBD gummies and 1,000 cases of CBD capsules for a total price of $295,000. (Compl. ¶ 19). On November 26, 2019, Nu-X ordered an additional 500 cases of CBD gummies and 500 cases of CBD capsules for a total price of $147,500. (Compl. ¶ 21). Nu-X memorialized these orders by sending the Purchase Orders to Global, each with its own unique identification number, on the day each order was agreed upon. (Compl. ¶ 23). (Compl. Exs. A-B, DN 1-2 to 1-3).

The Purchase Orders each contained the logo and letterhead of National Tobacco Company ("NTC"). (Compl. ¶¶ 13, 15). Nu-X is an affiliate of NTC and they share the same principal office location. (Compl. ¶¶ 13-14). During its dealings with Global, Nu-X utilized NTC's vendor system to issue the invoices and purchase orders because Nu-X was a newly established company. (Compl. ¶ 13). Likewise, each Purchase Order was signed, but Nu-X has not specified whether the form was signed by an agent from Nu-X or NTC. (Purchase Orders).

After receiving Nu-X's Purchase Orders, Global responded by sending Nu-X sales orders ("Sales Orders") for each transaction. (Def.'s Mot. Compel Arbitration Exs. A-B, DN 18-2 to 18-3). Each Sales Order contains the same price, quantity, and identification number as the corresponding Purchase Order, and each Sales Order also references the identification number of the relevant Purchase Order. At the bottom of each Sales Order, however, there is a provision stating: "By making payment for your order, you acknowledge and agree to all of our terms and conditions at this link: https://bit.ly3qEZo3r." The hyperlink then leads to terms and conditions ("Terms and Conditions"), including a mandatory arbitration provision and a choice of law section stating that Nevada law applies to any disputes arising under the Sales Order. (Def.'s Mot. Compel Arbitration Ex. C, DN 18-4).

Nu-X filed this action alleging claims for breach of contract and breach of the implied covenant of good faith and fair dealing. (Compl. ¶¶ 33-48). Nu-X claims that Global failed to deliver the agreed upon quantity of CBD capsules and gummies and that many of the cases that were delivered did not comply with market standards. (Compl. ¶¶ 27-28).

Global subsequently filed this Motion to Compel Arbitration. (DN 18). The motion is ripe for decision.

## II. JURISDICTION

This Court has subject-matter jurisdiction of this matter based upon 28 U.S.C. §§ 1332(a), 1331, and 1367(a).

## III. STANDARD OF REVIEW

Motions to compel arbitration are evaluated under the summary judgment standard set forth in Fed. R. Civ. P. 56(c). *Atkins v. CGI Tech. & Sols., Inc.*, 339 F. Supp. 3d 619, 628 (E.D. Ky. 2018) (citation omitted). The party who opposes arbitration must show a "genuine issue of material fact as to the validity of the agreement to arbitrate." *Id.* (quoting *Great Earth Cos. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002)). In addition, the party opposing arbitration "has an evidentiary burden of demonstrating that the arbitration agreement itself, rather than the contract in which it is found, is unenforceable." *Id.* (citing *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91-92 (2000)).

## IV. DISCUSSION

The Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* (the "FAA") applies to arbitration provisions in "contract[s] evidencing a transaction involving commerce . . . ." 9 U.S.C. § 2 (1947). The FAA codifies "liberal federal policy favoring arbitration agreements" and creates a presumption of arbitrability when a contract contains an arbitration clause. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983) ("[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.").

### A.     <u>Under U.C.C. § 2-207, the arbitration clause is part of the contract and therefore a presumption of arbitrability arises.</u>

Federal courts apply state substantive law to state law claims. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). Federal courts also apply the choice of law principles of the state in which they sit. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). The Terms and Conditions incorporated into Global's Sales Orders contain choice of law provisions stating that the law of Nevada will govern the agreement between the parties. (Terms & Conditions 5). In Kentucky, enforceability of a choice of law clause is governed by Restatement (Second) Conflict of Law § 187 (1971). However, this rule only applies "in situations where it is established to the satisfaction of the forum that the parties have chosen the state of the applicable law." Restatement (Second) Conflict of Law § 187 cmt. A (1971). It appears, however, that Nevada and Kentucky law are in accord regarding the application of U.C.C. § 2-207.[1]

KRS 355.2-207 is used by courts to determine the contents of an agreement when it is clear that an agreement exists. *Dorton v. Collins & Aikman Corp.*, 453 F.2d 1161, 1165 (6th Cir. 1972). KRS 355.2-207 applies when "an agreement has been reached either orally or by informal correspondence between the two parties and is followed by one or both of the parties sending formal acknowledgements or memoranda embodying the terms so far as agreed upon and adding terms not discussed." *Id.* (quoting U.C.C. § 2-207 cmt. 1). Nu-X and Global prepared Purchase Orders and Sales Orders, respectively, memorializing their agreement. (Sales Orders; Change Notices). Global's Sales Orders contained a hyperlink to a Terms and Conditions page which

---

[1] Kentucky applies the most significant relationship test to determine which state law to apply. *Schnuerle v. Insight Commc'ns Co., L.P.*, 376 S.W.3d 561, 566-67 (Ky. 2012). In this case the outcome is the same under both Kentucky and Nevada law because both have adopted identical versions of U.C.C. § 2-207, rendering unnecessary a determination of which state has the most significant relationship. Nev. Rev. Stat. § 104.2207 (2015); KRS 355.2-207. For convenience the Court will reference KRS 355.2-207.

included the arbitration clause ("Arbitration Clause"). (Sales Orders; Terms & Conditions; Def.'s Mot. Compel Arbitration Ex. C, DN 18-4, ¶10). The addition of this term by Global that was not part of Nu-X's original order is therefore governed by U.C.C. § 2-207.

Both parties address the applicability of KRS 355.2-207. (Pl.'s Resp. Def.'s Mot. Compel Arbitration 9, DN 21; Def.'s Reply Mot. Compel Arbitration 6, DN 22). KRS 355.2-207 provides that additional terms become part of the contract unless "they materially alter it." U.C.C. §2-207(2).[2] Whether an arbitration clause "materially alters" the agreement is determined on a case by case basis. *Oceanconnect.com, Inc. v. Chemoil Corp.*, No. H-07-1053, 2008 WL 194360, at *2 (S.D. Tex. Jan. 23, 2008) (citation omitted). "[T]he burden of proving the materiality of the alteration must fall on the party that opposes inclusion." *ICC Chem. Corp. v. Vitol, Inc.*, 425 F. App'x 57, 59 (2d Cir. 2011) (alteration in original) (internal quotation marks omitted) (citation omitted). A material alteration is one that would "result in surprise or hardship if incorporated without express awareness by the other party . . . ." U.C.C. § 2-207 cmt. 4. Nu-X cannot claim surprise simply because they failed to read the conditions referenced in Global's Sales Orders. *Morgan v. Mengel Co.*, 242 S.W. 860, 862 (Ky. 1922); *Yee v. Weiss*, 877 P.2d 510, 513 (Nev. 1994). Nu-X has not contended that arbitration would cause undue hardship to the parties, though such argument would be futile. District courts have repeatedly found that a mandatory arbitration clause does not rise to the level of hardship necessary to materially alter the contract, especially

---

[2] U.C.C. § 2-207(2) governs here as opposed to U.C.C. §2-207(3). U.C.C. § 2-207(2) applies when there is a writing that satisfies the requirements for a contract and U.C.C. § 2-207(3) applies when the conduct of the parties "is sufficient to establish a contract for sale although the writings of the parties do not otherwise establish a contract." Under U.C.C. § 2-201(2), the formalities of a contract are met when between merchants "a writing in confirmation of the contract and sufficient against the sender is received and the party has reason to know of its contents." Both documents are enforceable against the sending party and therefore the formalities for a contract are met under U.C.C. § 2-201(2). U.C.C. § 1-201, cmt. 37 (The intention to authenticate may be "on any part of the document and in appropriate cases may be found in a billhead or letterhead.").

when a party has been presented with the document containing the clause on more than one occasion.³ *Dumont Tel. Co v. Power & Tel. Supply Co.*, 962 F. Supp. 2d 1064 (N.D. Iowa 2013) ("Thus, the mere fact that an arbitration provision deprives a party of a judicial forum cannot constitute 'hardship' for the purpose of materially altering a contract."); *Dixie Aluminum Prods. Co. v. Mitsubishi Int'l Corp.*, 785 F. Supp. 157, 161 (N.D. Ga 1992) ("[T]he arbitration provision . . . does not constitute a 'material alteration.'"); *Hagrpota for Trading & Distrib., Ltd. v. Oakley Fertilizer Inc.*, No. 09 Civ. 9779(CM)(KNF), 2010 WL 2594286, at *6 (S.D.N.Y. June 18, 2010) ("[A]rbitration clauses are not normally considered 'material' terms in transactions between merchants, and are so routinely enforced even if one party professes unawareness of the presence of an arbitration clause in the agreement." (citations omitted)). Nu-X received the Sales Orders before paying for the products and received the sales order form with the Terms and Conditions incorporated via hyperlink on two separate occasions. Nu-X, therefore, had an opportunity and a duty to read the Terms and Conditions and was on notice of the arbitration clause.

Nu-X has not demonstrated that inclusion of the arbitration clause "significantly alter[s] standard industry practice and thus could surprise a buyer who would not have expected to be operating under such terms." *Suzy Phillips Originals, Inc. v. Coville, Inc.*, 939 F. Supp. 1012, 1017 (E.D.N.Y. 1996). Therefore, the Court finds that the arbitration clause does not materially alter the contract and therefore is a part of the contract under U.C.C. § 2-207(2). This gives rise to a presumption of arbitrability. *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25.

---

³ Timothy Davis, *U.C.C. Section 2-207: When Does an Additional Term Materially Alter a Contract?*, 65 Cath. U. L. Rev. 489 (2016).

**B. Nu-X is unable to rebut the presumption that the Arbitration Clause is enforceable.**

Under the FAA, the party opposing the applicability of an arbitration provision bears the burden of proof. *McGrew v. VCG Holding Corp.*, 244 F. Supp. 3d 580, 586 (W.D. Ky. 2017). The opposing party "must show a genuine issue of material fact as to the validity of the agreement to arbitrate." *Id.* (quoting *Simons*, 288 F.3d at 889). Motions to compel arbitration "should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible to an interpretation that covers the asserted dispute." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986).

Nu-X argues that the arbitration clause does not apply because (1) the Terms and Conditions state that they apply as of January 21, 2021; and (2) the provision was not "conspicuous." (Pl.'s Resp. Def.'s Mot Compel Arbitration 7, 11). Neither of these arguments successfully create a "genuine dispute of fact," and therefore Nu-X is unable to rebut the presumption that the arbitration clause is enforceable. *Atkins*, 339 F. Supp. at 628 (citation omitted).

Nu-X first argues that the arbitration clause is not enforceable because the Terms and Conditions in the exemplar provided by Global state "Revised: Jan. 21, 2021." (Terms & Conditions). Global, however, has shown that the arbitration clause in its current Terms and Conditions is identical to the arbitration clause sent to the Nu-X in 2019. First, Global produced screenshots indicating that the Sales Orders forms, which contained the hyperlink to the Terms and Conditions, were sent to Nu-X on the dates the orders were made. (Def's Reply Mot. Compel Arbitration Exs. D-E, DN 22-3 to 22-4 [hereinafter Screenshots]). Likewise, Global produced two declarations from Global stating that the arbitration clause has not been altered since October 2018. (Bortman Decl. ¶ 8, DN 22-1 ("Since October 2018, Global Cannabinoids' Terms and Conditions

7

have contained the arbitration provision set forth in Paragraph 10 of the Terms and Conditions."); Merritt Decl. ¶ 11, Aug. 25, 2021, DN 22-2 ("The update did not affect the arbitration provision.")). Nu-X, on the other hand, has produced no evidence indicating that Global's standard terms have been altered since Nu-X originally received the Sales Orders in 2019. The absence of rebuttal evidence combined with the strong federal policy in favor of arbitration compel the conclusion that Nu-X has not overcome the presumption of arbitrability. *Atkins*, 339 F. Supp. 3d at 628 (citation omitted); *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25.

Second, Nu-X contends that since the arbitration clause was not "conspicuous," it is unenforceable. (Pl.'s Resp. Def.'s Mot Compel Arbitration 11). There is no general requirement that contract terms be conspicuous to be enforceable. Nu-X cites cases discussing limited warranties which must be conspicuous as opposed to general contract terms, such as an arbitration provision, which do not. *Bartelt Aviation, Inc. v. Dry Lake Coal Co.*, 682 S.W.2d 796, 798 (Ky. App. 1985). These authorities are clearly inapposite. Global's Terms and Conditions were linked in the Sales Orders Nu-X received before paying for its products. (Sales Orders). Failure to read a contract is not a defense so long as the party was given a fair opportunity to read it. *Morgan*, 242 S.W. at 862; *Yee*, 877 P.2d at 513. As both parties point out, this case does not involve browsewrap or clickwrap terms and conditions.[4] (Pl.'s Resp. Def.'s Mot. Compel Arbitration 11;

---

[4] As the Sixth Circuit has noted:

> A browsewrap agreement discloses terms on a website that offers a product or service to the user, and the user assents by visiting the website to purchase the product or enroll in the service. Browsewrap agreements may be contrasted with "clickwrap" agreements, which require the user to manifest assent to the terms by clicking on an icon.

*Traton News, LLC v. Traton Corp.*, 528 F. App'x 525, 526 n.1 (6th Cir. 2013) (internal citation omitted) (citation omitted).

Def.'s Reply Mot. Compel Arbitration 4). Instead, the arbitration clauses at issue here were received by Nu-X as part of a negotiation with another merchant, both ostensibly sophisticated businesses. Nu-X had ample opportunity to read the Sales Order and the Terms and Conditions before consummating the orders. Therefore, Nu-X has not overcome the FAA's presumption that the arbitration clause is enforceable.

## V. CONCLUSION

For the foregoing reason, **IT IS HEREBY ORDERED** that Defendant's Motion to Compel Arbitration and Stay Proceedings (DN 18) is **GRANTED**. The parties to this action are **COMPELLED** to arbitrate all claims. This case is **STAYED** until the conclusion of the ordered arbitration.

Greg N. Stivers, Chief Judge
United States District Court

October 20, 2021

cc: counsel of record